UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| TERRY TINDAL, } | Case No. 8:19-cv-02907-JSM-JSS |
| PLAINTIFF } | |
| } | |
| v. } | |
| } | |
| DEFENSE TAX GROUP INC.; } | |
| RELIANCE MEDICAL FINANCE, LLC; and } | |
| CHRISTOPHER MARTIN SOLTON } | |
| _____/ | |

## **MOTION FOR DEFAULT JUDGMENT**

Plaintiff hereby moves for default judgment and in support thereof submits the following:

### Introduction

1. On November 26, 2019, Plaintiff filed its Complaint against Defendants alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collections Practices Act ("FCCPA"). As of January 3, 2020, all three Defendants were served with Plaintiff's Complaint. Defendants filed two answers to Plaintiff's Complaint. Both answers were struck by the court after motion by Plaintiff. As of today, June 21, 2020, Defendants have yet to submit a proper answer. On June 6, 2020, Plaintiff filed a Motion for Clerk's Default. On June 8, 2020, this court ordered the clerk to enter clerk's default and ordered Plaintiff to file a motion for default judgment by June 22, 2020. On June 8, 2020, clerk's default was entered against Defendant. Pursuant to the court's June 8, 2020 order, Plaintiff now files this motion for default judgment.

2. When a default judgment is entered, a Plaintiff with a well-pled complaint need not further prove liability.  "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact. Liability, if well-pleaded, is established by virtue of a default." <u>Miller v. Paradise of Port Richey, Inc.</u>, 75 F. Supp. 2d 1342 (M.D.Fla. 1999) (citing <u>Buchanan v. Bowman</u>, 820 F.2d 359, 361 (11th Cir.1987)).  However, that Plaintiff will still need to show the precise amount of damages sustained.  "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default." <u>Miller v. Paradise of Port Richey, Inc.</u>, 75 F. Supp. 2d 1342 (M.D.Fla. 1999).

**Amount of Damages - statutory**

3. The relevant portions of the FDCPA say that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of [...] any actual damage sustained by such person as a result of such failure [...] [and] in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 […] [and] in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." FDCPA, 15 U.S.C. § 1692k(a)(1-3).  In determining the amount of such additional damages, the FDCPA instructs courts to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." FDCPA, 15 U.S.C. § 1692k(b)(1).

4. In the State of Florida, it is appropriate for a court to pierce the corporate veil when the following three elements are met: "1. the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; 2. the corporate form must have been used fraudulently or for an improper

purpose; and 3. the fraudulent or improper use of the corporate form caused injury to the claimant." <u>Molinos Valle Del Cibao, C. por A. v. Lama</u>, 633 F. 3d 1330 (11th Cir. 2011).

5. In the instant case, Plaintiff's Complaint details how and why this court should pierce the corporate veil and find liability to all three Defendants, as they effectively operate as one overall entity in their illegal debt collection business scheme.  For example, in part, Defendant RMF does not actually legally exist, but it once did, and Defendant CMS was its owner. Defendant CMS still uses Defendant RMF's e-mail addresses and domain name for internet-based debt collection communication.  And Defendant RMF and Defendant CMS use Defendant DTG's bank account for receiving payments from consumers as a result of their overall illegal debt collection business scheme.  Plaintiff's Complaint at paragraphs 26-33 sets forth in more detail the reasons why this court should pierce the corporate veil.  By virtue of Defendants' failure to defend this lawsuit, all of those paragraphs are deemed admitted for the purposes of this motion.

6. In the instant case, Plaintiff's Complaint details how Defendant RMF (and Defendants DTG and CMS, through theories involving piercing the corporate veil) violated nine distinct sections of the FDCPA: 15 U.S.C. § 1692d(2), 1692e(2)(A), 1692e(4), 1692e(5), 1692e(10), 1692e(11), 1692e(14), 1692f(1), and 1692i(a)(2).  Plaintiff's Complaint further details how Defendant RMF (and Defendants DTG and CMS) violated those sections in ten distinct ways.  The frequency, persistence, and nature of noncompliance is sufficient for the court to give a maximum statutory award of $1,000 for Defendants' violations of the FDCPA.  Additionally, as a result of the default, Defendants have admitted the violations were willful and the court cannot find good faith.  See <u>Miller v. Paradise of Port Richey, Inc.</u>, 75 F. Supp. 2d 1342 at 1346 (M.D.Fla. 1999).

7. The relevant portions of the FCCPA say that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but

not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." FCCPA, Fla. Stat. § 559.77(2).  In determining the amount of such additional damages, the FCCPA instructs courts to consider "the nature of the defendant's noncompliance with s. 559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional." Id.  The standard for the FCCPA additionally indicates that "[i]n applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." FCCPA, Fla. Stat. § 559.77(5).

8. The FCCPA also enables the court to "award punitive damages." FCCPA, Fla. Stat. § 559.77(2). "Under the FCCPA, an award of punitive damages is only appropriate when a defendant's conduct rises above the standard of willfulness, to the level of malicious intent." Simmons v. Washington Mutual Finance, Inc., Case No.: 8:06-CV-01613-JDW-TBM (M.D. Fla. Feb. 22, 2007) (citing Story v. J.M. Fields, Inc., 343 So. 2d 675, 677 (Fla. 1st DCA 1977)). "Malicious intent includes wrongful acts that "evidence a purpose to inflict insult and injury, or are wholly without excuse." Id. (citing Story, 343 So. 2d at 677).

9. In the instant case, Plaintiff's Complaint details how Defendant RMF (and Defendants DTG and CMS, through theories involving piercing the corporate veil) violated two distinct sections of the FCCPA: Fla. Stat. § 559.72(8) and 559.72(9).  Plaintiff's Complaint further details how Defendant RMF (and Defendants DTG and CMS) violated those sections in four distinct ways.  The nature of Defendants' noncompliance is sufficient for the court to give a maximum statutory award of $1,000 for its violations of the FCCPA.  Additionally, as a result of the default, Defendant has admitted the violations were willful and the court cannot find good faith.  See Miller v. Paradise of Port Richey, Inc., 75 F. Supp. 2d 1342 at 1346 (M.D.Fla. 1999).

10. In the instant case, Plaintiff's Complaint details how Defendant RMF (and Defendants DTG and CMS, through theories involving piercing the corporate veil) violated the FCCPA in such a way that rises above the standard of willfulness, to the level of malicious intent, and evidencing a purpose to inflict insult and injury, wholly without excuse.  Some such ways Defendants behaved in a manner supporting an award of punitive damages was by calling Plaintiff an asshole, calling Plaintiff's attorney an asshole, threatening to meet Plaintiff in person, and filing a lawsuit against Plaintiff with no legitimate basis to sustain said lawsuit (which was summarily dismissed by the California small claims court judge presiding over it).

### Amount of Damages - costs

11. In the instant case, Plaintiff paid $400 to file this case.  In the instant case, Plaintiff paid $224 to the process server to serve Defendants with the summons and complaint.  The FDCPA allows for the recovery of costs in a successful action, FDCPA, 15 U.S.C. § 1692k(a)(1-3).  The FCCPA allows for the recovery of costs in a successful action, FCCPA, Fla. Stat. § 559.77(5).  Therefore, Defendants are liable to Plaintiff in the amount of $624 for Plaintiff's costs.

### Amount of Damages – attorney's fees

12. To establish an award for attorney's fees, an attorney must complete a "lodestar" analysis: a reasonable hourly rate multiplied by the number of hours worked, which is then sometimes affected by a multiplier.  "The starting point for evaluating the reasonableness of attorney-fee awards is a calculation of the "lodestar" − the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing Blum v. Stenson, 465 U.S. at 895-96 n. 11).

"[][T]he district court has wide discretion in exercising its judgment on the appropriate fee based on its own expertise..." Id. at 1303.

13. Plaintiff's attorney charges an hourly rate of $300.  This amount has not changed since he began practicing consumer law several years ago.  This court – and others – have previously affirmed $300 as a reasonable hourly rate.  Reasonableness is further supported by the National Consumer Law Center's (NCLC) United States Consumer Law Attorney Fee Survey Report 2017-2018 – a peer-reviewed survey of market rates among consumer lawyers.[1]  The survey indicates that among consumer lawyers in and around Tampa, the average hourly rate is $372 and the median hourly rate is $350.  For consumer lawyers in and around Miami and Fort Lauderdale (where Plaintiff's attorney actually practices), the average hourly rate is $376 and the median hourly rate is $350.  Plaintiff's attorney charges $300 – well below the average and median rates in this district and in his home district.

14. In determining the number of hours reasonably expended, the Supreme Court suggests that "[t]he party seeking an award of fees should submit evidence supporting the hours worked. . . ." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  Attached to this motion is an affidavit setting forth the time spent on this case.  The affidavit is a copy of the exact spreadsheet Plaintiff's attorney uses when documenting the time spent on cases and used when documenting the time spent on the instant case.  Such documentation is always done in a contemporaneous manner.  Whenever work is done on a case, the date is entered, as is the time spent (in increments of six minutes), as is a summary off the specific work performed.

15. In the instant case, as of the time of the finalization of this motion, Plaintiff's attorney has worked 34.5 hours on this case.  Plaintiff's attorney anticipates spending at least an additional 2.5 hours on this

---

[1] https://burdgelaw.com/wp-content/uploads/2019/10/US-Consumer-Law-Attorney-Fee-Survey-Report-2017-2018.pdf

case. As such, based on 37.0 hours of work at a requested rate of $300 an hour, Plaintiff's attorney, through Plaintiff, requests an award of $11,100 in attorney's fees.

## Conclusion

WHEREFORE, Plaintiff respectfully requests that the court enter final judgment against each Defendant, joint and severally liable, pursuant to the rule regarding piercing the corporate veil, all in favor of Plaintiff, as follows:

A. $1,000 in statutory damages for each Defendant's violations of the FDCPA, totaling $3,000;

B. $1,000 in statutory damages for each Defendant's violation of the FCCPA, totaling $3,000;

C. Punitive damages in the maximum amount as this court deems appropriate;

D. $400 in costs for Plaintiff's filing fee and $224 in costs paid to the process server in serving Defendant, totaling $624;

E. And $11,100 in attorney's fees;

For a grand total award of $17,724 plus punitive damages in the maximum amount as this court deems appropriate; and any other such relief as this court deems appropriate.

Respectfully submitted this 22nd day of June, 2020,

By Plaintiff's attorney: /s/ Nicholas Michael Murado_____
Nicholas Michael Murado
Florida Bar # 102769
Murado Law, P.A.
2010 S.W. 99th Avenue
Miramar, Florida, 33025
Telephone: 754-816-2196
E-mail: muradolaw@gmail.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was submitted via CM/ECF and sent to all interested and appeared parties.

Additionally, the foregoing was sent via e-mail and U.S. Mail to Defendants' attorney, who is not admitted to practice in this district, at the address contained in his motion for admission pro hac vice [DE 11], and which is listed below:

Attorney Michael J. Fiscus
Law Office of Michael J. Fiscus
291 Del Amo Fashion Square, Suite 14616
Torrance, California, 90503
mfiscus896@gmail.com

    Respectfully submitted this 22nd day of June, 2020,

        By Plaintiff's attorney: /s/ Nicholas Michael Murado
                             Nicholas Michael Murado
                             Florida Bar # 102769
                             Murado Law, P.A.
                             2010 S.W. 99th Avenue
                             Miramar, Florida, 33025
                             Telephone: 754-816-2196
                             E-mail: muradolaw@gmail.com