UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY TINDAL,

    Plaintiff,

v.                                    Case No: 8:19-cv-2907-T-60JSS

DEFENSE TAX GROUP INC.,
RELIANCE MEDICAL FINANCE,
LLC and CHRISTOPHER MARTIN
SOLTON,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff's Amended Motion for Default Judgment ("Motion") (Dkt. 30). For the reasons that follow, the Court recommends that the Motion be granted.

## BACKGROUND

This is an action for damages under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Florida Consumer Collection Practices Act, Florida Statutes §§ 559.55, *et seq.* ("FCCPA"). (Dkt. 1.) Plaintiff alleges that he is a consumer as defined in 15 U.S.C. § 1692a(3) and Florida Statutes § 559.55(8). (*Id.* ¶¶ 10-11.)

Plaintiff states that "at some point in the past," he cosigned for a personal loan that went into default. (Dkt. 1 ¶ 12.) Plaintiff alleges that Defendant Reliance Medical

Finance, LLC ("Defendant RMF") services the loan and began trying to collect on it. (Dkt. 1 ¶ 13.) Plaintiff agreed to bi-weekly payments of $50 to repay the debt and furnished Defendant RMF with his bank information to enable it to withdraw these payments. (*Id.*) Plaintiff alleges Defendant Defense Tax Group Inc. ("Defendant DTG") is the entity that withdrew the payments each time. (*Id.*) Plaintiff also alleges that this repayment arrangement broke down because Defendant RMF, through Defendant DTG's bank account, began withdrawing the payments on the wrong days. (*Id.* ¶ 15.) Plaintiff informed Defendant RMF that he no longer consented to the arrangement and demanded that Defendant RMF stop the collection activity. (*Id.* ¶ 16.) Plaintiff alleges Defendants responded with an email containing expletives and threatening to sue Plaintiff. (*Id.* ¶ 17.) Plaintiff further alleges Defendant RFC brought a fraudulent lawsuit against Plaintiff in small claims court in California. (*Id.* ¶¶ 19-25.) Plaintiff alleges Defendants' communications with him never advised him that the communications were made to collect a debt and that Defendants' communications inaccurately stated the amount due. (*Id.* at 34.)

On December 19, 2019, Plaintiff served Defendants DTG and RMF, and Plaintiff furnished proof of service to the Court on January 23, 2020. (Dkts. 6, 7, 8.) On January 10, 2020, Defendant Solton, through out-of-state counsel, filed an answer on behalf of himself, RMF, and DTG. (Dkt. 4.) On January 13, 2020, Plaintiff moved to strike Defendants' Answer. (Dkt. 5.) Defendants failed to timely respond to the Motion to Strike within 14 days, as provided under Local Rule 3.01(b), and the Court granted the unopposed Motion to Strike. (Dkt. 10.)

On March 3, 2020, Defendants filed an Application for Admission of Attorney Pro Hac Vice and an amended answer. (Dkt. 11, 12.)  Plaintiff moved to strike Defendants' Amended Answer.  (Dkt. 14.)  On March 30, 2020, the Court dismissed Defendants' Motion to Appear Pro Hac Vice without prejudice because Defendants' motion did not contemplate designating local counsel within 14 days, as provided under Local Rule 2.02(a).  (Dkt. 15.)  Defendants failed to timely respond to the Motion to Strike as permitted by Local Rule 3.01(b), and the Motion to Strike was granted on April 14, 2020. (Dkt. 17.)  Since that time, Defendants have failed to file an amended answer and have not obtained admission to appear pro hac vice.  On June 6, 2020, Plaintiff filed a Motion for Default as to each defendant. (Dkt. 18.)  On June 8, 2020, the Clerk entered a clerk's default against each defendant.  (Dkt. 20, 21, 22.)

On June 22, 2020, Plaintiff moved for default judgment.  (Dkt. 24.)  On November 4, 2020, the Court denied Plaintiff's initial Motion for Default Judgment without prejudice based on the failure to show service of process on each defendant. (Dkt. 29.)

On November 17, 2020, Plaintiff filed his Amended Motion for Default Judgment.  (Dkt. 30.)  Plaintiff supports the Motion with amended summonses returned executed as to each defendant. (Dkt. 30-2.)  Plaintiff requests $1,000 in statutory damages for each defendant's violations of the FDCPA and punitive damages in an amount the Court deems appropriate. (Dkt. 30 at 8.)  Plaintiff also seeks an award of $12,000 in attorney's fees and $624 in costs as the prevailing party in this case. (Dkt. 30 at 8.)  To date, Defendants have not appeared through properly

admitted counsel, and no response or defense to this action has been filed since Defendants' Amended Answer was stricken on April 14, 2020.

## APPLICABLE STANDARDS

### A. Default Judgment

When a party fails to plead or otherwise defend a judgment for affirmative relief, the clerk of the court must enter a default against the party against whom the judgment was sought.  Fed. R. Civ. P. 55(a); *see also* Fed. R. Civ. P. 12(a)(1)(A)(i) (providing that a defendant must serve an answer within twenty-one days after being served with the summons and complaint).  Because of the "strong policy of determining cases on their merits," however, default judgments are generally disfavored.  *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).  "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (alteration omitted) (quotation marks omitted). Entry of default judgment is warranted only when there is "a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  "As a general rule, [a] court may enter a default judgment awarding damages without a hearing only if the amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits." *DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1129 (M.D. Ala. 2004).

**B. Attorney's Fees**

To determine the amount of attorneys' fees to be awarded, courts apply the following three-step process: (1) determine whether the party prevailed in the litigation; (2) determine the lodestar amount, which is calculated by multiplying the number of hours reasonably expended in litigating the claim by the reasonable hourly rate; and (3) adjust the lodestar, if necessary, to account for the results obtained by the prevailing party. *Atlanta J. & Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1289 (11th Cir. 2006).

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Generally, the relevant market for determining the reasonable hourly rate for an attorney's services is the place where the case is filed. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)).

The party applying for fees bears the burden of establishing the reasonableness of the proffered rate, which can be met by setting forth direct evidence of rates charged under similar circumstances or submitting opinion evidence of reasonable rates. *Norman*, 836 F.2d at 1299. In addition, the court may use its own experience and judgment to make an appropriate independent assessment of the reasonable value of an attorney's services. *Id.* at 1303–04. In calculating what hours were reasonably expended on litigation, the court should exclude excessive, unnecessary, and

redundant hours and any time spent litigating discrete and unsuccessful claims. *Id.* at 1301–02.

## ANALYSIS

Under Rule 55(a) of the Federal Rules of Civil Procedure, the entry of a default is appropriate when the party against whom judgment is sought has failed to plead or otherwise defend. When service of process is insufficient, the court has no power to render a default judgment or enter default because service of process is a jurisdictional requirement and the court lacks personal jurisdiction over a defendant who has not been served. *Thomas v. Bank of Am., N.A.*, 557 Fed. App'x 873, 875 (11th Cir. 2014); *In re Physicians Reliance Ass'n, Inc.*, 415 Fed. App'x 140, 142 (11th Cir. 2011); *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Inv.*, 553 F.3d 1351, 1360 (11th Cir. 2008).

### A. Service of Process

Under Federal Rule of Civil Procedure 4(e)(1), or (2), a corporation or an association may be served (1) according to state law governing service on an individual as by delivering a summons and a complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(1), (h); *see Howard v. Otis Elevator*, 6:09-cv-948-Orl-19KRS, 2010 WL 916660, at *2-3 (M.D. Fla. Mar. 11, 2010). Under Federal Rule of Civil Procedure 4(e)(1), an individual can be served "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

Here, service was attempted in California. Section 415.20(a) of the California Code of Civil Procedure governs substitute service of process on corporate and non-corporate entities. Judicial Council Comment to Code Civ. Proc., § 415.20 subd. (a). Substitute, rather than personal service, may be used in the first instance. *Id.* Such service may be accomplished on the defendant's officer or employee, as designated in the appropriate statute, by leaving a copy of the summons and complaint during usual office hours in his or her office with the person who is apparently in charge. *Id.*; *Bein v. Brechtel-Jochim Gr., Inc.*, 8 Cal. Rptr. 2d 351, 353 (Cal. Dist. App. 4th 1992). The papers may be left with a personal secretary of the individual to be served. Judicial Council Comment to Code Civ. Proc., § 415.20 subd. (a). Along with the service at the office, the summons and the complaint must later be mailed to complete substitute service. Cal. Civ. Proc. Code § 415.20(a).

Section 415.20(b) of the California Code of Civil Procedure governs substitute service of process on natural persons who are not minors, wards, conservatees, or political candidates. Cal. Civ. Proc. Code § 415.20(b). Personal service must be diligently attempted in the first instance. *Id.*; *see also Ellard v. Conway*, 114 Cal. Rptr. 2d 399, 401-03 (Cal. Dist. App. 4th 2001); 50A Cal. Jur. 3d Process, Notices, and Subpoenas § 28 (citing Judicial Council Comment to Code Civ. Proc., § 415.20 subd. (b)). After two or three unsuccessful attempts at personal service at a proper place, substitute service may be used. *Bein,* 8 Cal. Rptr. 2d at 353.

Substitute service on an individual may be achieved by leaving a copy of the summons and the complaint at the defendant's usual place of business in the presence

of a person who is apparently in charge. Cal. Civ. Proc. Code § 415.20(b) (West 2004). "The term 'usual place of business' includes a defendant's customary place of employment as well as his own business enterprise." Judicial Council Comment to Code Civ. Proc., § 415.20 subd. (b). Along with service at the defendant's usual place of business, the summons and the complaint must later be mailed to complete substitute service. *Id.*

Plaintiff's amended proof of service as to Defendant DTG states that the process server substitute served DTG on December 23, 2019, by serving "Karen 'Doe' . . . Receptionist, under CCP 416.10 as a person in charge of the office at the time of service who stated she is authorized to accept service on behalf of [DTG]." (Dkt. 30-2 at 2.) Similarly, Plaintiff's amended proof of service as to Defendant RMF states that the process server substitute served RMF on December 23, 2019, by serving "Karen 'Doe' . . . Receptionist, under CCP 416.10 as a person in charge of the office at the time of service who stated she is authorized to accept service on behalf of [RMF]." (Dkt. 30-2 at 3.) The Court finds that Plaintiff's amended proofs of service establish proper service as to Defendants DTG and RMF under Section 415.20(a) of the California Code of Civil Procedure.

In addition, Plaintiff's amended proof of service as to Defendant Solton states that the process server substitute served Solton on January 3, 2020, by serving "Karen 'Doe' . . . Receptionist, under CCP 416.10 as a person in charge of the office at the time of service who stated she is authorized to accept service on behalf of [Solton] at his usual place of business." (Dkt. 30-2 at 1.) Plaintiff's amended proof of service as

to Defendant Solton also reflects five prior attempts to serve Defendant Solton at his business office. (Dkt. 30-2 at 1.) The Court finds that Plaintiff's amended proofs of service establish proper service as to Defendant Solton under Section 415.20(b) of the California Code of Civil Procedure. Thus, Plaintiff has shown proper service of process for each defendant.

### B. Liability

Counts I through III of Plaintiff's Complaint allege that Defendants violated the FDCPA. (Dkt. 1 ¶¶ 35–61.) In Counts IV through VI, Plaintiff alleges Defendants violated the FCCPA. (Dkt. 1 ¶¶ 62–88.)

To state a claim under the FDCPA, the plaintiff must allege facts showing that (1) the defendant is a debt collector under the FDCPA, (2) the defendant collected or tried to collect a debt from the plaintiff, and (3) the defendant committed an act or omission prohibited by the FDCPA when it collected or sought to collect the debt. *Fuller v. Becker & Poliakoff, P.A.*, 192 F. Supp. 2d 1361 (M.D. Fla. 2002). Similarly, to state a claim under the FCCPA, the plaintiff must allege facts showing that (1) the defendant is a person under the FCCPA, (2) the defendant collected or tried to collect a debt from the plaintiff, and (3) the defendant committed an act or omission prohibited by the FCCPA when it collected or sought to collect the debt. *See* Fla. Stat. § 559.72.

Plaintiff alleges supporting facts for each element of his FDCPA and FCCPA claims against Defendants. Plaintiff alleges that 1) he has been the subject of collection activity arising from consumer debt; and 2) Defendants are debt collectors as defined

under the FDCPA. (Dkt. 1 ¶¶ 9-11, 36-45.) Plaintiff also alleges that Defendants have engaged in acts or omissions prohibited under the FDCPA and the FCCPA. (Dkt. 1 ¶¶ 1–34, 63–88.) Defendants, through their default, admit the well-pleaded allegations. *See Cotton*, 402 F.3d at 1278 (providing that a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact.) The Court therefore recommends that default judgment is appropriate on Plaintiff's FDCPA and FCCPA claims against each defendant.

## C. Damages

Having determined that Plaintiff is entitled to a default judgment in his favor, the Court must next consider the amount of damages he should recover. "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). When seeking a default judgment, the plaintiff must do more than just tell the Court what his damages are; the plaintiff "must show the Court what those damages are, how they are calculated, and where they come from." *Phazzer Elecs., Inc. v. Protective Sols., Inc.*, No. 6:15-cv-348-Orl-31DAB, 2015 WL 7184561, at *5 (M.D. Fla. Oct. 27, 2015) (quoting *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010) ), *report adopted*, 2015 WL 7076847 (M.D. Fla. Nov. 13, 2015). A plaintiff who fails to properly

support his claim of damages has no right to recovery, even against a defaulted defendant. *See id.*

The FDCPA and FCCPA both allow a prevailing plaintiff to recover any actual damages he incurred due to the defendant's violation, statutory damages in an amount not to exceed $1,000, and reasonable attorney's fees and costs. 15 U.S.C. § 1692k(a); Fla. Stat. § 559.77(2). The FCCPA also allows a prevailing plaintiff to recover punitive damages. Fla. Stat. § 559.77(2). Plaintiff seeks to recover 1) $1,000 in statutory damages for each defendant's violations of the FDCPA; 2) $1,000 in statutory damages for each defendant's violations of the FCCPA; 3) punitive damages in an amount the Court deems appropriate; 4) $624 in costs; and 5) $12,000 in attorney's fees. (Dkt. 30 at 8.)

As for his claim to statutory damages, Plaintiff is entitled to an award of up to $1,000 under each statute, for a total possible award of $2,000. To determine the amount Plaintiff should recover, the Court must consider the frequency and persistence of defendants' misconduct, the nature of Defendants' misconduct, and the extent to which Defendants' misconduct was intentional. 15 U.S.C. § 1692k(b)(1); Fla. Stat. § 559.77(2).

Defendants admit by their default that they knew they were violating Plaintiff's rights when they used unlawful tactics to collect a debt. But all three Defendants "are extensions of each other and cannot be considered distinctly separate debt collectors for purposes of the violation under the FDCPA and FCCPA." *Ugarte v. Sunset Construction, Inc.*, No. 8:07-cv-735-T-23EAJ, 2008 WL 4723600, at *2 (M.D. Fla. Oct.

21, 2008). Thus, the Court recommends Defendants be held jointly and severally liable in the total amount of $1,000 for violating the FDCPA. The Court also recommends that Defendants be held jointly and severally liable in the total amount of $1,000 for violating the FCCPA, for a total of $2,000 in statutory damages.

**D. Punitive Damages**

As for his claim to punitive damages under the FCCPA, Florida law permits a plaintiff to recover punitive damages only where clear and convincing evidence shows that the defendant engaged in intentional misconduct or gross negligence. *See* Fla. Stat. § 768.72(2); *Goodin v. Bank of Am., N.A.*, 114 F. Supp. 3d 1197, 1214–15 (M.D. Fla. 2015). A defendant's conduct is intentional if the defendant "had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the [plaintiff] would result and, despite that knowledge, intentionally pursued that course of conduct." Fla. Stat. § 768.72(2)(a). Plaintiff has not presented sufficient allegations to conclude that Defendants engaged in intentional misconduct or gross negligence. Upon a full review of the record, the Court finds that an award of $2,000 plus attorney's fees is adequate to punish Defendants for their violation of the FCCPA and to deter Defendants and other debt collectors from engaging in the same misconduct in the future. *See, e.g.*, *Baumann v. Prober & Raphael*, No. 615CV1951ORL40GJK, 2017 WL 10350673, at *3 (M.D. Fla. May 17, 2017) (declining to award punitive damages where statutory fee award of $2,000 was adequate to punish and deter defendant).

### E. Attorney's Fees

Along with any judgment awarded to Plaintiff, both the FDCPA and FCCPA permit an award of attorney's fees to the prevailing party. *Alston v. Summit Receivables*, No: 6:17-cv-1723-Orl-31DCI, 2018 WL 3448595, at *9–10 (M.D. Fla. June 27, 2018); 15 U.S.C. §1692k(a)(3); Fla. Stat. § 559.77(2). Through Defendants' default, Plaintiff is the prevailing party and is entitled to reasonable attorney's fees. Plaintiff's entitlement to attorneys' fees requires that the Court determine whether the hourly rate requested is reasonable and whether the number of hours expended on litigation is reasonable. After determining the amount of attorney's fees, the Court must determine Plaintiff's taxable costs under 28 U.S.C. § 1920.

#### 1. Reasonable Hourly Rate

Plaintiff seeks attorneys' fees totaling $12,100 for 38 hours reasonably expended by attorney Nicholas M. Murado. (Dkt. 24.) To support these requests, Plaintiff submits Attorney Murado's time records and cites a Consumer Law Attorney Survey. (Dkt. 30-1; Dkt. 30 at 6.)

Attorney Murado requests an hourly rate of $300 in this case. In Plaintiff's Motion for Default Judgment, Plaintiff states Attorney Murado's hourly rate has remained at $300 for the several years he has been practicing consumer law. (Dkt. 30 at 6.) Plaintiff also cites a survey from the National Consumer Law Center's (NCLC) United States Consumer Law Attorney Fee Survey Report 2017–2018, a peer reviewed survey of the market rate among consumer lawyers. The survey says that among consumer lawyers in and around Tampa, the average hourly rate is $372, and the

- 13 -

median hourly rate is $350. (Dkt. 30 at 6.) Plaintiff also notes that other courts have found $300 to be reasonable, but cites no supporting legal authority. (Dkt. 30 at 6.)

Courts in this district have found survey reports unpersuasive and unreliable when determining a reasonable hourly rate. *See Sheeley v. Advanced Check Processing,* Case No. 3:10–cv–0231–J–34JBT, 2010 WL 4569868, at *3 (M.D. Fla. Sept.13, 2010) (not following the Consumer Law Attorney Fee Survey and awarding consumer law attorneys $200 per hour); *Selby v. Christian Nicholas & Associates, Inc.,* Case No. 3:09–cv–121–J–34JRK, 2010 WL 745748, at *5 (M.D. Fla. Feb.26, 2010) (rejecting requested hourly rates based on Consumer Law Attorney Fee Survey, and setting reasonable hourly rate at $200).

That said, relying on the undersigned's experience in determining an appropriate hourly rate, the Court recommends finding that the $300 rate sought is reasonable. *See Norman*, 836 F.2d at 1303 (citations omitted) (the court "is itself an expert on the question [of reasonable fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value"); *see also Scelta v. Delicatessen Support Serv., Inc.,* 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002). Such rate is in line with rates found reasonable in cases arising under the FCCPA in the Tampa Division of the Middle District of Florida. *See, e.g.*, *Alston v. Summit Receivables*, No. 6:17-cv-1723-Orl-31DCI, 2018 WL 3448595, at *10 (M.D. Fla. June 27, 2018), *report and recommendation adopted*, 2018 WL 3436789 (M.D. Fla. July 17, 2018) (finding in default judgment case arising under FDCPA and FCCPA, reasonable fee for counsel

with 15 years of experience was $300.00 per hour); *see also Castro v. Capital One Servs.*, *LLC*, No. 8:16-cv-889-T-17TGW, 2017 WL 6765246, at *3 (M.D. Fla. Dec. 15, 2017) (finding that a reasonable hourly rate for attorneys in FDCPA and FCCPA cases ranged between $100.00 and $300.00), *report and recommendation adopted*, 2018 WL 276126 (M.D. Fla. Jan. 2, 2018).

### 2. Hours Reasonably Expended

Plaintiff asserts that Attorney Murado reasonably expended 38 hours on this litigation and anticipates spending another 2.0 hours on this case. (Dkt. 30 at 6.) As to the 38 hours, the charges do not appear excessive, redundant, or otherwise unnecessary. But Plaintiff cites no legal authority supporting an entitlement to anticipated time. The governing case authority provides that courts must use "the number of hours reasonably *expended* on the litigation," and that the moving party "should submit evidence supporting the hours *worked*." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphasis added); *see also Nat'l Alliance for Accessibility, Inc. v. Hull Storey Retail Group, LLC*, No. 3:10-cv-778-J-34JBT, 2012 WL 3853520, *4 (M.D. Fla. June 28, 2012) (rejecting the argument plaintiff's attorney was entitled to anticipated time spent on the case). Thus, time that has not been expended is not compensable. For these reasons, the lodestar for Attorney Murado's fees is the reasonable hourly rate of $300 multiplied by the 38 hours reasonably expended, totaling $11,400.

### 3. Adjustments to Lodestar

Plaintiff does not request either an upward or downward adjustment to the lodestar. (Dkt. 30.) Thus, the Court will not adjust the lodestar.

**C. Costs**

Plaintiff seeks an award of $624 in costs, which includes costs for the filling fee ($400) and service of process on all three Defendants ($224). (Dkt. 30 at 8.) Both categories of costs are permitted under the FDCPA and FCCPA. 15 U.S.C. §1692k(a)(3); Fla. Stat. 559.77(2).

Accordingly, it is **RECOMMENDED:**

1. Plaintiff's Amended Motion for Default Judgment (Dkt. 30) be **GRANTED** to the extent stated herein;

2. The Clerk be direct to enter judgment in Plaintiff's favor and against Reliance Medical Finance, LLC, as to Counts I and IV, against Defense Tax Group Inc. as to Counts II and V, and against Christopher Martin Solton as to Counts I and VI;

3. Plaintiff be awarded damages against Defendants, jointly and severally, in the amount $14,024, which amount represents  statutory damages against of $2,000 for violating the following: Fair Debt Collection Practices Act ($1,000) and the Florida Consumer Collection Practices Act ($1,000), attorney's fees of $11,400, and costs of $624.

**IT IS SO REPORTED** in Tampa, Florida, on April 29, 2021.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Thomas P. Barber
Counsel of Record